## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN DOE                                          :
c/o Laffey, Bucci & Kent, LLP                     :
1435 Walnut Street, 7th Floor          :
Philadelphia, PA  19102                           :
        Plaintiff             :
                              :
        v.                    :   NO.
                              :
VALLEY FORGE MILITARY                             :
ACADEMY AND COLLEGE                               :
1001 Eagle Road                                   :
Wayne, PA  19087                                  :
        Defendant             :

## DEFENDANT'S
## <u>NOTICE OF REMOVAL</u>

Please take notice that, pursuant to 28 U.S.C. §1441, Defendant, Valley Forge

Military Academy and College ("VFMAC"), by and through its counsel, Riley, Riper,

Hollin and Colagreco, hereby removes the action captioned as <u>John Doe v. Valley Forge</u>

<u>Military Academy and College</u>, No. 2804 April Term 2019, as filed in the Court of

Common Pleas, Philadelphia, Pennsylvania (the "Action"), to the U.S. District Court for

the Eastern District of Pennsylvania, based upon the following:

1. Plaintiff John Doe is, and alleges in the action, that he is a resident of Ohio.

(<u>See</u>, ¶1 of the Complaint.)

2. VFMAC is a citizen and resident of the Commonwealth of Pennsylvania.

1

3.  Plaintiff filed his Complaint on April 17, 2018, with the Philadelphia Court of Common Pleas.  A  true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit "A".

4.  Plaintiff has not yet served the Complaint upon Defendant.

5.  No acceptance of the Complaint, formal or informal, for the purpose of service has been made, or offered, occurred.

6.  Therefore, removal to this Court is proper.  See, e.g., Encompass Insurance Company v. Stone Mansion Restaurant, Inc., 902 F.3d 147 (3d Cir. 2018).

7.  This Notice of Removal was timely filed within thirty (30) days of the date that Plaintiff's Complaint was filed with the Court of Common Pleas of Philadelphia County, Pennsylvania.

8.  Thus, this Notice of Removal is timely under 28 U.S.C. §1446(b)(1).

9.  All Defendants (i.e., the only Defendant in the case) have joined on the removal of this action to federal court.  28 U.S.C. §1446(b)(2)(A).

10.  Pursuant to 28 U.S.C. §1446(d), Defendant will give written notice of removal to Plaintiff and will file a copy of this Notice of Removal with the Clerk of the U.S. District Court for the Eastern District of Pennsylvania and will file the Notice of Removal with the Prothonotary of the Philadelphia County Court of Common Pleas.

1010483.1

WHEREFORE, Defendant, VFMAC, notifies this Court that this action is removed from the Court of Common Pleas for Philadelphia County, Pennsylvania to the U.S. District Court for the Eastern District of Pennsylvania, pursuant to the provisions of 28 U.S.C. §1441 and 1446.

RILEY RIPER HOLLIN & COLAGRECO

By: _____

George B. Randolph, Esquire #39278
Attorney for Defendant
717 Constitution Drive, Suite 201
Exton, PA 19341
(610) 458-4400
george@rrhc.com

Date: April 18, 2019

3

# EXHIBIT "A"

**LAFFEY, BUCCI & KENT, LLP**
IDENTIFICATION NO.: 94221/208905/313516
BRIAN D. KENT /GAETANO D'ANDREA/
M. STEWART RYAN
1435 Walnut Street, Suite 700
PHILADELPHIA, PA 19102
(215) 399-9255

*Filed and Attested by the
Office of Judicial Records
17 APR 2019 02:42 pm
A. SILIGRINI*

**ATTORNEYS FOR PLAINTIFFS**

| | |
|---|---|
| JOHN DOE<br>c/o Laffey, Bucci & Kent, LLP<br>1435 Walnut Street, 7th Floor<br>Philadelphia, PA 19102<br><br>Plaintiff,<br><br>v.<br><br>VALLEY FORGE MILITARY ACADEMY<br>AND COLLEGE<br>1001 Eagle Road<br>Wayne, PA 19087<br><br>Defendants. | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br>LAW DIVISION<br><br>APRIL TERM, 2019<br><br>No.<br><br>JURY TRIAL DEMANDED |

### NOTICE TO DEFEND

<table>
<tr><td>

NOTICE

"You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgement may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

"YOU SHOULD TAKE THIS PAPER TO YOU LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL and INFORMATION SERVICE
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-1701"

</td><td>

"AVISO

"Le han demandado a usted en la corte. Si usted quiere defenderse do estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias, de plazo al partir de la fecha de la demanda y la notificatión. Hace falta asentar una comparecencia escrita o en persona o con un abagado y entregar a la corte en forma escrita sus defensas o sus objecciones a las demandas en contra de su persona. Sea avisado que si usted no de defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificaion. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

"LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABAGADO O SI NO TIENE EL DINERO SUFICIENTE DE PARGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASSOCIACION DE LICENDIADOS DE FILADELFIA
SERVICO DE REFERENCIA E INFORMACION LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: (215) 238-1701"

</td></tr>
</table>

## COMPLAINT – CIVIL ACTION

1.     The plaintiff, John Doe, (fictitious, anonymous name), is an adult individual residing in the State of Ohio. Plaintiff's name and address are not contained in this Complaint so as to protect the privacy and identity of John Doe, who is a victim of crime and incurred injuries

and damages of a sensitive nature as a child as a result of the acts and failures of defendant outlined below. Plaintiff may be contacted through his counsel as outlined herein.

2.      There exists good cause for plaintiff to use pseudonyms due to the harmful effect of the public disclosure of his identity and the harm inflicted upon John Doe and his family to date as a result of false statements made public by defendant regarding this matter. Plaintiff, John Doe, has personally verified the facts as set forth in this Complaint as evidenced by the attached Verification. Defendant is aware of plaintiff's identity and suffers no prejudice as a result of concealing his identity in the Complaint and Verifications.

3.      Defendant, Valley Forge Military Academy and College (hereinafter referred to as "VFMAC") is a Pennsylvania corporation with a registered business address of 1001 Eagle Road, Wayne, PA 19087-3695.   It is authorized to do business and is doing business in the Commonwealth of Pennsylvania as a private institution, operating as an elite military school, grades seven (7) through twelfth (12th) grade, of which Plaintiff attended beginning in twelfth (12th) grade. VFMAC is also a co-educational two-year private college enrolling student in programs which lead to AA, AS, or ABA degrees.

4.      At all relevant times hereto, VFMAC was acting by and through their duly authorized actual and/or apparent agents, servants and employees, in particular, their head of school, board of directors and/or trustees, teachers, dean of students, supervisors and/or coaches, acting within the course and scope of their actual and/or apparent agency and/or employment.

5.      At all relevant times, Colonel John C. Church, Jr., USMCR (hereinafter "Church") was President and an employee of VFMAC beginning on or about June 1, 2016. At relevant times, Church also served as the chief executive officer of VFMAC with responsibility for over one-hundred fifty employees.

6.    At all relevant times, Sandra Young was head of school of VFMAC and was an employee of VFMAC working in the course and scope of her employment with VFMAC.

7.    At all relevant times, William R. Floyd, Jr. was Chairman of the Board of Trustees of VFMAC and was an employee of VFMAC working in the course and scope of his employment with VFMAC.

8.    In addition to the direct claims against VFMAC, VFMAC is vicariously liable to Plaintiff for injuries sustained as a result of negligence, gross negligence, outrageous conduct and/or reckless misconduct, as described further herein, of persons or entities whose conduct was under their control, or right to control, specifically, their board of directors/trustees, John English, William R. Floyd, Jr., Sandra Young and Colonel John C. Church, Jr., and whose conduct directly and proximately caused Plaintiff's injuries. Moreover, Defendant VFMAC ratified the actions of TAC Officers employed by VFMAC, thereby making them vicariously liable for those acts.

9.    Venue is proper in Philadelphia County pursuant to Pa. R. C. P. 2179(a)(2) as VMFAC regularly conducts business within Philadelphia County through, including but not limited to, its various partnerships with Philadelphia entities and schools, as well as Pa. R. C. P. 2179(a)(3) and (a)(4) as the statements at issue in Plaintiff's defamation/false light claims below were published and disseminated throughout Philadelphia County by Philadelphia publications.

## Introduction

10.    For decades, there has been a national epidemic of child abuse among military academies throughout the country perpetuated by both teachers, administrators, and students alike. Cadets and midshipmen at Army, Navy and Air Force academies in the United States formally reported 117 sexual assaults in the 2017-2018 school year, and a total of 747 students have said they received unwanted sexual contact, a nearly fifty (50) percent increase from two years prior.

Case ID: 190402804

11.     This statistic, however, represents only a fraction of the abuse as many instances go unreported, even in cases where abuse is known and/or suspected to have occurred. This statistic also does not fully represent the rampant student on student hazing and abuse that occurs throughout youth, high school and college programs, often with the acquiescence and/or deliberate ignorance of employees and supervisors.

12.     The matter at hand is about an internationally renowned military academy with a history of pervasive child abuse of youth that has occurred over decades under the watch of numerous administrators.  Under Colonel John C. Church, Jr. and Sandra Young, child students at VFMAC were physically, mentally and/or sexually abused by youth participants, and a culture of tolerance of abuse was enabled and furthered by Church and his staff, evidenced by their continued failure to report and/or prevent suspected, reasonably knowable and/or known child abuse.

13.     Despite the confirmation of "many" incidents of abuse that occurred under numerous administrators, VFMAC outrageously and unconscionably allowed abuse to continue and chose not to alert the public at large to their findings and/or dangers associated with boarding at VFMAC or take any remedial measures whatsoever to prevent future abuse from occurring.

14.     This lawsuit is also about VFMAC's failure to protect plaintiff and other children from severe and pervasive abuse that was rampant for years, perpetrated by both employees and students, the blatant refusal of their employees to report known and/or suspected child abuse that was being or had been committed upon a student at VFMAC, of which they knew or should have known and the unconscionable and outrageous conduct of VFMAC in retaining employees after knowing of multiple instances of abuse involving multiple teachers/students/children in VFMAC, thereby again exposing children, including plaintiff, to known danger.

15.     This lawsuit is also about VFMAC's attempts to impede investigations by VFMAC's employees, including but not limited to Title IX Officers, and VFMAC's failure to correct same in order to preserve VFMAC's public reputation at the expense of a minor students, namely, plaintiff, and the horrific mental and emotional abuse, harassment, and ridicule suffered by plaintiff as a result.

**Factual Background**

16.     By way of background, John Doe was an average teenager who struggled socially in middle school and through high school. As a result, in on or about November 2015, while in eleventh grade, John Doe's psychologist suggested John Doe attend military school, as he would benefit from a ranking system.

17.     For the Spring Academic Semester of 2016, John Doe enrolled in Howe Military Academy located in Howe, Indiana.  Howe Military Academy was a private, co-educational and college preparatory boarding school located in Northeast Indiana.  On or about March 18, 2019, Howe Military Academy announced it will be closing its doors due to operational and fiscal challenges.

18.     On or about August 1, 2016, John Doe enrolled at VFMAC.  Immediately upon being integrated into VFMAC, plaintiff was subjected to physical and mental abuse that other children had been forced to suffer for decades at VFMAC.

19.     On or about October 1, 2016, John Doe is assaulted in a classroom at VFMAC by Juvenile Perpetrator # 1 while a teacher is in the room.  The assault is videotaped by a cadet at VFMAC.  An employee of VFMAC contacts John Doe and/or his parents to request that the

incident being handled "in-house" because said Juvenile Perpetrator #1 has "a promising future" despite the Radnor Township Police Department urging John Doe to file a complaint.

20.     Not long after John Doe was injured in the incident in October 2016, amazingly, the staff continued to put John Doe in danger allowing the bullying, physical abuse, harassment, and humiliation to continue.  In fact, inexplicably and unconscionably, despite the fact that the administration *knew* about the history of abuse and hazing under numerous administrators, the bullying was allowed to continue.

21.     Specifically, cadets at Valley Forge Military Academy would severely degrade other cadets in the program, including but not limited to physical and emotional assaults on John Doe.  On numerous occasions, other cadets would create songs about John Doe to embarrass, humiliate, and antagonize John Doe. This type of bullying was common place at VFMAC.

22.     On or about December 3, 2016, John Doe's roommate has a party in their shared dormitory.  During a phone call during said party, John Doe's roommate tells his girlfriend that he is going to assault John Doe.  Other cadets begin to steal and hide John Doe's belongings.

23.     VFMAC staff, who should have been helping John Doe and/or reporting the harassment to the administration and/or doing something to protect the kids while under the supervision of VMFAC, incredibly did nothing to stop the abuse John Doe was enduring after the incident and John Doe feared for his safety.  When John Doe would return to the dormitories after class and/or other activities he noticed that cadets were stealing his things.

24.     On or about December 4, 2016, John Doe informs his parents concerning the bullying that has been occurring, cadets have been stealing from him, and that he "needs to change

rooms." Shockingly, VFMAC had failed to stop, or take any action to prevent, the abuse John Doe was enduring despite abuse being reported to VFMAC administration and employees.

25.    On or about December 13, 2016, John Doe is informed that his "roommate got kicked out" as a direct and proximate result of John Doe enduring continued physical, phycological, and mental abuse by his roommate, and other cadets at VFMAC.

26.    On or about January 31, 2017, VFMAC recognize the harassment John Doe is enduring, and his environmental science and physic teachers promise "they will make sure he isn't bullied anymore." Astonishingly, the assaults, harassment, humiliation, bullying, and abuse of John Doe continued.

27.    John Doe remained in constant fear and in a state of psychological unrest, being afraid to speak up in fear of the VFMAC staff and other cadets, while remaining in fear of threats and/or assaults. John Doe was made aware of an incident at VFMAC when a thirteen year old cadet informed VFMAC staff that he was being bullied, harassed, and humiliated by other cadets. Cadets would later break into the cadet's room and branded him with a "B," for "bitch." Not surprisingly, the cadet never spoke up again.

28.    On or about February 1, 2017, John Doe was injured when cadet, Juvenile Perpetrator # 2 violently slammed John Doe's head into a wall. John Doe was afraid to tell anyone because he "knew they wouldn't do anything." VFMAC allowed, and promoted, a culture that allowed minor cadets to be continually bullied, harassed, and humiliated.

29.    **Amazingly, no one at VFMAC reported any of the reports of abuse that had occurred thus far to authorities despite their obligation to do so, thereby directly and**

**continuously endangering the safety of cadets and ratifying the conduct of cadets assaulting John Doe.**

30.     On or about February 3, 2017, John Doe requests VFMAC provide a "safe space" due to the relentless assaults and bullying.  VFMAC TAC Officer Romonav tells John Doe that he does not need a safe space and dormitories are assigned by way of the ranking system at VFMAC.

31.     As a result of bullying, John Doe was moved into another room and was without a roommate for a short period of time. The assaults decreased temporarily.  However, Cadets began to abuse John Doe both physically and mentally, and the abuse increased as time passed.  John Doe was teased, ostracized, and physically abused, including but not limited to "whipping" cans of shaving cream in the shower.

32.     On or about February 25, 2017, John Doe is subjected to a violent assault by other cadets at VFMAC while in the dormitory room of another cadet.  Approximately six cadets, including but not limited to Juvenile Perpetrator #3, locked John Doe in the dormitory room.  John Doe is repeatedly and violently hit with a lacrosse stick.  John Doe's mouth is forced open and a lacrosse stick is forcibly forced into his mouth, as far as possible.

33.     VFMAC cadets then attempt to penetrate John Doe anally with the same lacrosse stick, through his clothes.  This violent assault is so common at VFMAC that cadets have named it "tooth pasting."  According to a former cadet, tooth pasting is "somewhat of a[n] initiation at VF. It consists of someone putting a stick in someone's butt (pants on)." In describing this "ritual" the same cadet admitted to an episode where he and another cadet picked up a nearby broom handle and shoved the broom handle into another cadet's "ass."

34.    Shockingly, John Doe had to endure further assaults.  John Doe's hands and legs are restrained.  Cadets covered his eyes, and begin striking him with belts. Cadets "water boarded"

John Doe by covering his face and pouring water on his face and mouth to simulate drowning. Cadets attempted to hang John Doe from the door in his dormitory using his restrained arms and legs. John Doe was left screaming while hanging restrained and blindfolded from the door. It was approximately twenty (20) minutes until someone found him. Simply put, John Doe was tortured.

35.     On or about February 26, 2017, John Doe leaves his dormitory to shower in a communal bathroom. Cadet Juvenile Perpetrator #4 steals John Doe's towel while he is showering. Juvenile Perpetrator #4, and other cadets, throw John Doe's towel into a mop bucket, and then pee on it. Juvenile Perpetrator #4, and other cadets, begin throwing objects into the shower, including but not limited to a shaving cream can that strikes John Doe's ankle and explodes. John Doe is bruised, cut, in pain, and humiliated once again.

36.     From the outset, John Doe was subjected to abuse that no child, especially a child as young as sixteen (16) years-old, should be subjected to. He was continuously and repeatedly called vulgar names; was told he was worthless and "a bitch." John Doe was hit and punched in the dormitory before, during and after class, was slammed into walls, and would be kicked and kneed in the stomach.

37.     On or about February 26, 2017, John Doe reports the incident and bruising to VFMAC TAC Officer Matthew Schmidt. VFMAC TAC Officer Matthew Schmidt states "he is going to handle it." Under the supervision and in the charge and care of Major Schmidt, John Doe has been repeatedly attacked. Despite knowing there was a problem with bullying and despite the abuse that John Doe was suffering, the staff placed John Doe in situations that permitted the abuse to continue for months. There were never any room checks or supervision by VFMAC staff to stop the abuse despite VFMAC's knowledge of the problem.

38.     Although required to report this to the administration pursuant to VFMAC's policy, it was either never reported by Major Schmidt or other members of the staff because it was accepted as part of the culture in the program *or* it was reported to the administration who knowingly and deliberately ignored same. Regardless of who consciously disregarded the safety of the cadets, there was absolutely no corrective action, punishment or preventative measures taken to ensure it never happened again.

39.     Major Schmidt, who should have been helping John Doe and/or reporting cadets to the administration and/or doing something to protect the kids at VFMAC, incredibly never informed John Doe's parents.  On or about February 27, 2018, John Doe informs his parents of the abuse and showed his parents his bruises.  John Doe's parents were shocked, alarmed and extremely concerned.

40.     On or about March 1, 2017, John Doe' parents visit VFMAC to address the continued abuse and bullying endured by John Doe. John Doe, and his parents, participate in a meeting with various VFMAC administrators and staff, including but not limited to Sandra Young and James Young, the interim Commander of Cadets at VFMAC.

41.     Although mandated to immediately report the abuse pursuant to Pennsylvania law, VFMAC chose not to immediately report it to law enforcement. Instead, VMFAC added fuel to the fire of the hell that John Doe was in as a result of VFMAC's deliberate and callous indifference to the cadets, including, but not limited to plaintiff.

42.     On March 1, 2017, John Doe and his parents met with the Radnor Township Police Department to address the assaults for the first time.  John Doe, with his parents, meet with Officer Nick Laffredo of the Radnor Township Police Department located in Radnor, Delaware County, Pennsylvania.  Shortly thereafter, Juvenile Perpetrators #2-4 are charged with assaulting John Doe.

The Juvenile Perpetrator conceded to the assaults described herein, and agreed to participate in alternative forms of punishment through the juvenile justice system.

43.     As a result of the actions/inactions of VFMAC, in March 2017 John Doe reached his breaking point, wanting to quit school. He was unable to attend school for the remainder of the year and was forced to complete his courses through remote instruction.

44.     Upon John Doe's departure from VFMAC in March 2017, the Mainline Media News company published a story on March 9, 2017 detailing a history of abuses at VFMAC. In a deliberate effort to hide decades of abuse at VFMAC, Mary Heller, a spokeswoman for VFMAC issued a statement to Mainline Media News, giving categorically false statements about prior investigations leading up to his absence, stating that "Whenever our administration is made aware of an incident, we follow the proper protocol.  We take every allegation seriously and investigate each thoroughly" and implying VFMAC had followed proper protocols, which is untrue.

45.     Robert Wood, a former VFMAC employee and Title XI officer, filed a federal Title XI Complaint for incidents he contends are a systemic problem at VFMAC, according to the March 9, 2017, article published in Mainline Media News.  The article details numerous incidents at VFMAC, which went unreported, including but not limited to describing a hazing ritual among high school age students called "tooth pasting," which was previously described herein.

46.     John Doe became despondent, severely depressed and needed medical intervention. As such, he began treating with a psychologist and psychiatrist and was forced to take several anti-depressants merely to function on a regular basis.

47.     Prior to undergoing the abuse described above, John Doe was a healthy, typical teenage boy. He was all but guaranteed acceptance to an accredited four year college. Today, he

suffers emotionally and socially, no longer garners interest from college programs as a result and is dependent on treatment and medication to function.

## COUNT I -NEGLIGENCE
### Plaintiff v. Defendant

48.     Plaintiff incorporates paragraphs 1-47 as if they were set forth fully herein.

49.     Defendant VFMAC knew, had reason to know, or were otherwise on notice of the unlawful conduct of students, and individual employees who failed to protect the safety of children in their program, including plaintiff. Yet VFMAC failed to take reasonable steps and failed to implement reasonable safeguards to prevent acts of unlawful abuse, harassment, etc. in the future by VFMAC employees and students, including, but not limited to, preventing or avoiding placement of John Doe in functions or environments in which he would be endangered.

50.     Furthermore, at no time during the periods of time alleged did VFMAC have in place a system or procedure to supervise and/or monitor Juvenile Perpetrators # 1-4 or or other members of VMFAC to ensure that children, including John Doe, were not abused.

51.     Moreover, as set forth above, the incidents of abuse on VFMAC's campus were neither isolated nor unusual. For years, VFMAC failed to reprimand, punish, report, or otherwise sanction Juvenile Perpetrators # 1-4, students, employees and/or other members of the staff which it knew or had reason to know were a danger to children in the dormitories, including John Doe. VFMAC's knowing acquiescence and silence with respect to the known, or reasonably knowable, activities of Juvenile Perpetrators # 1-4, and other cadets who included John Doe, constituted a course of conduct through which acts of violence and mental torment and the violation of the sanctity of children were condoned, approved, and effectively authorized.

52.     Through its failure to timely reprimand and sanction the acts referenced above, and for all of the other reasons set forth herein including, without limitation, its failure to take the steps

necessary to prevent the occurrence of such reprehensible acts, VFMAC ratified said actions and, accordingly, is vicariously liable for the actions of the individual employees, including Col. John J. Church, Jr. and Sandra Young.

53.     Moreover, VFMAC had a duty to protect John Doe when he was entrusted to their care by his parents. John Doe's care, welfare, and/or physical custody were temporarily entrusted to VFMAC, and VFMAC voluntarily accepted the entrusted care of Plaintiff. As such, VFMAC owed John Doe, a minor child, a special duty of care, in addition to a duty of ordinary care, and owed John Doe the higher duty of care that adults dealing with children owe to protect them from harm.

54.     As set forth above, VFMAC, through their agents and/or employees subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights. VFMAC knew or reasonably should have known that TAC Officers Schmidt, Romonav, and other members of the TAC Officer staff were unfit agents.

55.     It was foreseeable that if VFMAC did not adequately exercise or provide the duty of care owed to children in their care, including, but not limited to John Doe, the children entrusted to the VFMAC's care would be vulnerable to abuse.

56.     For years prior to the abuse of plaintiff, as set forth herein, VFMAC knew or had reason to know that kids in VFMAC were being abused which was facilitated by the culture and environment created and allowed by the staff.

57.     VFMAC knew, and/or should have known, that those individuals who had abused others or who allowed same to occur were likely to commit further acts of abuse/allowance of abuse in the future. VFMAC owed to the public in general, and to John Doe in particular, a duty

to reasonably identify, remove, and/or report (to law enforcement authorities and/or to parents) individuals who it knew, or should have known, were abusing other kids or allowing same to occur.

58.     VFMAC owed to the public in general, and to John Doe in particular, a duty to reasonably supervise and/or monitor individuals who it knew, or should have known, were abusing others or allowing abuse to occur.

59.     Having taken custody of John Doe (who, at the time of all of the events at issue here was under the age of eighteen (18)) under circumstances such as to deprive him of his entitlement to safe care and protection, VFMAC owed to John Doe a duty to aid and/or protect him and to control the actions of third parties, including, but not limited to Juvenile Perpetrators # 1-4, and others as set forth in Restatement (Second) of Torts §§ 314A(4), 315.

60.     VFMAC did not have in place (or failed to enforce) adequate, reasonable, and necessary rules, regulations, policies, and procedures which could effectively identify (and deal with) abuse that was occurring.

61.     Despite actual knowledge of cadets abusing John Doe, he was continually subjected to abuse despite the foreseeable risk that cadets would engage in repeated acts of abuse, VFMAC did not have in place (or failed to enforce) adequate, reasonable, and necessary rules, regulations, policies, and procedures which could effectively identify, and deal with individuals like Juvenile Perpetrators # 1-4, and others who were abusing or allowing the abuse of children.

62.     VFMAC did not have in place adequate, reasonable, and necessary rules, regulations, policies, and procedures for the removal of students/employees who were allowing abuse to occur in their program and who were in the employ and/or service of VFMAC, for the reporting of abuse to criminal or other authorities or for the reporting to parents of children enrolled at VFMAC who were subjected to abuse.

63.     As discussed above, VFMAC failed to fulfill its legal duty to protect John Doe from the depraved acts outlined above. Moreover, VFMAC failed to take the reasonable steps to ensure that teachers, administrators, coaches and employees were psychologically fit to supervise, instruct, and mentor children in its school by:

a. Failing to prohibit, restrict, or limit the activities of employees who allowed of further abuse/hazing and/or failed to report same;

b. Failing to reasonably and properly investigate allegations of hazing and/or child abuse;

c. Failing to properly train and instruct its coaches and employees;

d. Failing to have in place standards of acceptable and unacceptable conduct;

e. Failing to designate competent investigators to evaluate complaints of abuse;

f. Failing to have in place standards for reporting acts of misconduct/abuse/hazing to law enforcement or other authorities, parents, and/or administrators.

g. Permitting Juvenile Perpetrator #1 to abuse a minor student/cadet on the premises of VFMAC during school hours and elsewhere;

h. Permitting Juvenile Perpetrator #2 to abuse a minor student/cadet on the premises of VFMAC during school hours and elsewhere;

i. Permitting Juvenile Perpetrator #3 to abuse a minor student/cadet on the premises of VFMAC during school hours and elsewhere;

j. Permitting Juvenile Perpetrator #4 to abuse a minor student/cadet on the premises of VFMAC during school hours and elsewhere;

k. Permitting Juvenile Perpetrators #1-4 to violate Pennsylvania criminal statutes;

l. Failing to properly and adequately supervise and discipline its employees to prevent the abuse that occurred to Plaintiff;

m. Failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of children who attend VFMAC, including Plaintiff, and, in the alternative, failing to implement and comply with such procedures which had been adopted;

n. Failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of students at VFMAC, including Plaintiff;

o. Creating an environment that facilitated abuse on Plaintiff;

p. Failing to adopt, enforce and/or follow policies and procedures to protect minors against harmful influence and contact by its employees and Participants, including Col. John J. Church, Jr., Sandra Young, and others.

q. Breaching the duties imposed by Restatement (Second) of Torts, § 324A, as adopted in Pennsylvania;

r. Failing to warn Plaintiff of the risk of harm posed by Juvenile Perpetrators #1-4 and others after Defendants knew or should have known of such risk;

s.  Failing to provide Plaintiff with any assistance in coping with the injuries sustained;

t.  Violation of duties imposed by Restatement (Second) of Agency § 213 and Restatement (Second) of Torts  § 317, as adopted in Pennsylvania;

u.  Failing to warn Plaintiff of the risk of harm that Plaintiff may suffer as a result of further contact with Juvenile Perpetrator #1-4 and others.

v.  Failing to warn or otherwise make reasonably safe the property which Defendants possessed and/or controlled, leading to the harm of Plaintiff;

w.  Failing to adopt/implement and/or enforce policies and procedures for the reporting to law enforcement, Office of Children and Youth, or other authorities within VFMAC and/or other external  and independent authorities of harmful acts to children;

x.  Failing to report Juvenile Perpetrators #1-4, and others harmful acts to authorities within VFMAC and/or other authorities;

y.  Violating its own policies and/or by-laws regarding child abuse and/or harassment by staff and/or students;

z.  Violating the requirements of Pennsylvania's Child Protective Services Law, 23 § 6311(a) and (b), constituting negligence *per se*;

aa. Ignoring, concealing, or otherwise mitigating the seriousness of the known danger that Juvenile Perpetrators #1-4, and others posed;

bb. Failing to prevent the repeated and continued abuse that was committed on Plaintiff;

cc. Failing to properly supervise and/or discipline its employees;

dd. Failing to  adequately and properly train its employees regarding abuse of students by teachers and/or employees; and

ee. Negligently managing and/or operating VFMAC.

64.     As a result of the negligent, intentional, outrageous, wrongful, deliberately and recklessly indifferent and unlawful conduct of Defendant, Plaintiff, John Doe, suffered severe injuries and damages, including, but not limited to:

a.     panic attacks;

b.     sleeplessness;

c.     loss of appetite;

d.     bruising and abrasions;

e.     permanent scarring;

f.     nausea;

g.     post-traumatic stress disorder;

h.     depression;

i.     anxiety;

j.     psychological injuries and conditions;

k.     psychiatric injuries and conditions;

l.     severe and permanent injuries as describe in the medical records of plaintiff;

m.     past pain and suffering;

n.    future pain and suffering;
o.    past medical expenses;
p.    future medical expenses;
q.    past mental anguish;
r.    future mental anguish;
s.    loss of earning capacity;
t.    embarrassment;
u.    humiliation; and
v.    loss of life's pleasures.

65.    John Doe has dysphoric mood and persistent anxiety. He has trouble falling asleep, staying asleep, impaired concentration, loss of energy and recurrent nightmares as a result of post-traumatic stress disorder.  He has been routinely punched and hit with closed fists, harassed, subjected to daily verbal and physical abuse, tied up, sexually assaulted, and has been continuously threatened while a cadet at VFMAC. Other cadets began to reject and exclude John Doe during events and daily functions, causing John Doe to become more isolated, depressed and overwhelmed, also feeling emotionally cut off from others, intense anxiety, intrusive thoughts related to the experienced abuse.

66.    At all relevant times, Defendants owed a duty to maintain a safe environment for the cadets at VFMAC, specifically Plaintiff.

67.    At all relevant times, Defendants had a duty to protect and safeguard Plaintiff from hurt, harm and danger while he was under their supervision.

68.    At all relevant times, Defendants had a duty to ensure that its employees were not abusing its minor students and/or participants.

69.    At all relevant times, Defendant had a duty to ensure that students at VFMAC were not abusing other students/participants.

70.    At all relevant times, Defendant had a duty to provide for Plaintiff's basic human needs, including the safety of his person.

71.     The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful conduct of Defendants, as set forth above and herein, consisted of among other things:

    a.   Failing to prohibit, restrict, or limit the activities of employees who allowed of further abuse/hazing and/or failed to report same;

    b.   Failing to reasonably and properly investigate allegations of hazing and/or child abuse;

    c.   Failing to properly train and instruct its coaches and employees;

    d.   Failing to have in place standards of acceptable and unacceptable conduct;

    e.   Failing to designate competent investigators to evaluate complaints of abuse;

    f.   Failing to have in place standards for reporting acts of misconduct/abuse/hazing to law enforcement or other authorities, parents, and/or administrators.

    g.   Permitting Juvenile Perpetrator #1 to abuse a minor student/cadet on the premises of VFMAC during school hours and elsewhere;

    h.   Permitting Juvenile Perpetrator #2 to abuse a minor student/cadet on the premises of VFMAC during school hours and elsewhere;

    i.   Permitting Juvenile Perpetrator #3 to abuse a minor student/cadet on the premises of VFMAC during school hours and elsewhere;

    j.   Permitting Juvenile Perpetrator #4 to abuse a minor student/cadet on the premises of VFMAC during school hours and elsewhere;

    k.   Permitting Juvenile Perpetrators #1-4 to violate Pennsylvania criminal statutes;

    l.   Failing to properly and adequately supervise and discipline its employees to prevent the abuse that occurred to Plaintiff;

    m.   Failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of children who attend VFMAC, including Plaintiff, and, in the alternative, failing to implement and comply with such procedures which had been adopted;

    n.   Failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of students at VFMAC, including Plaintiff;

    o.   Creating an environment that facilitated abuse on Plaintiff;

    p.   Failing to adopt, enforce and/or follow policies and procedures to protect minors against harmful influence and contact by its employees and Participants, including Col. John J. Church, Jr., Sandra Young, and others.

    q.   Breaching the duties imposed by Restatement (Second) of Torts, § 324A, as adopted in Pennsylvania;

    r.   Failing to warn Plaintiff of the risk of harm posed by Juvenile Perpetrators #1-4 and others after Defendants knew or should have known of such risk;

    s.   Failing to provide Plaintiff with any assistance in coping with the injuries sustained;

t.  Violation of duties imposed by Restatement (Second) of Agency § 213 and Restatement (Second) of Torts § 317, as adopted in Pennsylvania;

u.  Failing to warn Plaintiff of the risk of harm that Plaintiff may suffer as a result of further contact with Juvenile Perpetrator #1-4 and others.

v.  Failing to warn or otherwise make reasonably safe the property which Defendants possessed and/or controlled, leading to the harm of Plaintiff;

w.  Failing to adopt/implement and/or enforce policies and procedures for the reporting to law enforcement, Office of Children and Youth, or other authorities within VFMAC and/or other external and independent authorities of harmful acts to children;

x.  Failing to report Juvenile Perpetrators #1-4, and others harmful acts to authorities within VFMAC and/or other authorities;

y.  Violating its own policies and/or by-laws regarding child abuse and/or harassment by staff and/or students;

z.  Violating the requirements of Pennsylvania's Child Protective Services Law, 23 § 6311(a) and (b), constituting negligence *per se*;

aa. Ignoring, concealing, or otherwise mitigating the seriousness of the known danger that Juvenile Perpetrators #1-4, and others posed;

bb. Failing to prevent the repeated and continued abuse that was committed on Plaintiff;

cc. Failing to properly supervise and/or discipline its employees;

dd. Failing to adequately and properly train its employees regarding abuse of students by teachers and/or employees; and

ee. Negligently managing and/or operating VFMAC.

72.   As a proximate and direct result of Defendants' negligence and/or reckless conduct described herein, Plaintiff, John Doe, was harmed as a result and has sustained physical and emotional injuries, embarrassment, mental anguish, pain and suffering and loss of enjoyment of life and life's pleasures.

73.   Plaintiff has been and will likely, into the future, be caused to incur medical expenses and Plaintiff may likely incur a loss of earning capacity in the future.

74.   Defendants knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted with a reckless disregard for such risk for which Plaintiff is entitled to and hereby seeks punitive damages pursuant to the requirements of Pennsylvania law.

75.     Defendants' actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to plaintiff for which Plaintiff is entitled to and hereby seeks punitive damages.

WHEREFORE, Plaintiff, John Doe, demands judgment against Defendants, jointly and severally, in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

## COUNT II – NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff v. All Defendants

76.     Plaintiff incorporates herein by reference all of the allegations contained in paragraphs 1 through 75 and throughout this entire complaint as though same were fully set forth herein at length.

77.     Defendants, by and through their contact with Plaintiff, as described above, negligently, recklessly and/or intentionally committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Plaintiff, which also manifested in physical injuries to Plaintiff as set forth above, in an extreme, outrageous and harmful manner.

WHEREFORE, Plaintiff, John Doe, demands judgment against Defendants, jointly and severally, in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

## COUNT III -NEGLIGENT FAILURE TO RESCUE
### Plaintiff v. All Defendants

78.     Plaintiff incorporates herein by reference all of the allegations contained in paragraphs 1 through 77 and throughout this complaint as though same were fully set forth herein at length.

79.     The negligence and recklessness of Defendants, in directly and proximately causing the injuries and damages to Plaintiff described herein, include:

    a.  failing to take reasonable and necessary steps to rescue the Plaintiff after placing her in a perilous position;

    b.  failing to exercise reasonable and necessary steps to prevent further harm after rendering the Plaintiff in danger of further harm;

    c.  failing to take reasonable and necessary steps to give aid or assistance to the Plaintiff after rendering her in danger of further harm;

    d.  failing to take reasonable steps to obtain aid or assistance for the Plaintiff after rendering her in danger of further harm;

    e.  failing to take reasonable and necessary steps to prevent the delay in the appropriate care of the Plaintiff;

    f.  violation of the duties set forth in Restatement (Second) of Torts, Sections 314A & 322, as adopted in Pennsylvania.

80.     As a proximate and direct result of Defendants' breaches described in the preceding paragraph, Plaintiff sustained psychological and physical harms and injuries as described above.

81.     The aforementioned incidents resulted from the negligence, recklessness and/or intentional acts of Defendants and was due in no manner whatsoever to any act or failure to act on part of Plaintiff.

WHEREFORE, Plaintiff, John Doe, demands judgment against Defendants, jointly and severally, in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

**COUNT IV -*NEGLIGENCE PER SE***
**FAILURE TO REPORT SUSPECTED CHILD ABUSE IN VIOLATION OF**
**THE PENNSYLVANIA CHILD PROTECTIVE SERVICES LAW (PCPSL)**
**<u>Plaintiff v. All Defendants</u>**

82.     Plaintiff incorporates herein by reference all of the allegations contained in paragraphs 1 through 81 and throughout this complaint as though same were fully set forth herein at length.

83.     Defendants knew, had knowledge or had reasonable suspicion of harmful acts being committed by cadets on Plaintiff and negligently, recklessly and/or intentionally violated their statutory duty to report such abuse as required by Pennsylvania's Child Protective Services Law (PCPSL), 23 § 6311(a) and (b) et. seq.

84.     Defendants' violations constitute negligence *per se* under Pennsylvania law.

85.     Defendants' negligent, reckless and/or intentional failure to report such harmful acts allowed cadets to continually physically and sexually abuse Plaintiff.

86.     Such failure on part of Defendants was reckless, intentional, knowing, grossly negligent, deliberately and recklessly indifferent, outrageous, malicious and/or was a reckless and conscious disregard for the safety of Plaintiff.

WHEREFORE, Plaintiff, John Doe, demands judgment against Defendant, Valley Forge Military Academy and College, in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

## Punitive Damages

87.     A jury will no doubt award punitive damages against VFMAC for consciously disregarding the safety of children for years so as to protect its own reputation. Punitive damages are appropriate where the plaintiff has established that the defendant acted outrageously, with an evil motive or reckless indifference to the rights of others. Feld v. Merriam, 485 A.2d 742 (Pa. 1984). Punitive damages are awarded to punish a defendant for certain outrageous acts and to deter

[it] from engaging in similar conduct. G.J.D. v. Johnson, 552 Pa. 169, 713 A.2d 1127, 1131 (Pa. 1998). VFMAC allowed continued and repeated abuse to occur within the dormitories, and elsewhere and covered up same, choosing not to report it to parents, law enforcement or others, failed to sufficiently discipline employees/students, allowed the employees of VFMAC to make false statements to the media concerning the circumstances surrounding a history of assaults all the while knowing said statements were false, refused to retract said statements or issue a statement containing the truth of the matter knowing that John Doe may continue to be the subject of ridicule, harassment and abuse as a result. If there was ever a case of reckless disregard for the safety of children, it is this one.

WHEREFORE, Plaintiff, John Doe, demands judgment against Defendant, Valley Forge Military Academy and College, in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

LAFFEY, BUCCI & KENT, LLP

BY: _____
BRIAN D. KENT, ESQUIRE
GAETANO D'ANDREA, ESQUIRE
M. STEWART RYAN, ESQUIRE
Attorneys for Plaintiff, John Doe

Date: April 17, 2019

Case ID: 190402804

<u>VERIFICATION</u>

I, John Doe, hereby state that I am the Plaintiff in the foregoing lawsuit, and verify that the statements made in the foregoing Plaintiff's Complaint are true and correct to the best of my knowledge, information and belief, and I understand that the statements in said pleading are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

John Doe

Date: 4/15/19

Case ID: 190402804